UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

VIRGINIA URRUTIA,

                  Plaintiff,                  **MEMORANDUM & ORDER**
                                                                    14-CV-5311 (MKB)

                v.

TARGET CORP. d/b/a TARGET,

                  Defendant.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      On June 30, 2014, Plaintiff Virginia Urrutia commenced this action in the Supreme Court of New York, Richmond County, against Defendant Target Corporation doing business as Target. Defendant removed the proceeding to the Eastern District of New York on September 11, 2014, based on diversity jurisdiction under 28 U.S.C. § 1331. (Notice of Removal, Docket Entry No. 1.) Plaintiff alleges that Defendant's negligence caused her to fall and injure herself. (Compl. 2–3, annexed to Decl. of Michael Crowley ("Crowley Decl.") as Ex. A, Docket Entry No. 18-2.) Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Def. Notice of Mot. for Summ. J. ("Def. Mot."), Docket Entry No. 18; Def. Mem. of Law in Supp. of Def. Mot. for Summ. J. ("Def. Mem."), Docket Entry No. 18-16; Def. Reply Mem. in Supp. of Def. Mot. ("Def. Reply"), Docket Entry No. 18-18.) Plaintiff opposes the motion. (Pl. Mem. of Law in Opp'n to Def. Mot. ("Pl. Mem."), Docket Entry No. 20.) For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

**I.   Background**

      Plaintiff seeks damages for injuries she sustained when she slipped and fell in the aisle of the Target store on Richmond Avenue in Staten Island. (Def. Statement of Undisputed Facts

Pursuant to Local R. 56.1 ("Def. 56.1") ¶ 1, Docket Entry No. 18-1; Pl. Resp. to Interrogs. Set One ¶ 6 ("Pl. Interrog. Resp."), annexed to Crowley Decl. as Ex. K.)

### a. Customer safety protocol at Target

The Target store on Richmond Avenue opened in late 2013. (Dep. of Michael Hay ("Hay Dep.") 12:2–11, annexed to Crowley Decl. as Ex. H.) The parties agree that at the time of Plaintiff's injury, Defendant had several training and safety mechanisms in place to prevent and remedy slip-and-fall accidents. (Pl. Statement of Undisputed Facts Pursuant to Local R. 56.1 ("Pl. 56.1") ¶¶ 27, 28, 30, 33; Def. 56.1 ¶¶ 27, 28, 30, 33.)[1] At least once and up to three times per day, all employees in Defendant's Richmond Avenue store met to discuss "specific things going on that day," including customer safety. (Hay Dep. 9:2–22; Pl. 56.1 ¶ 28.) Every "team member" employee was trained to prevent and clean food and water spills, and some other employees were trained to prevent and clean hazardous materials. (Hay Dep. 18:3–12; Pl. 56.1 ¶ 29–30.) Team members were trained to communicate potential hazards to one another via walkie-talkie and to guard spills while their colleagues obtained cleaning supplies from the approximately seven "spill stations" throughout the store. (Hay Dep. 17:23–19:17.) Defendant's employees shared responsibility for identifying and cleaning spills, but the Leader on Duty ("LOD") was primarily responsible for "everything in the building." (*Id*. at 28:23–29:9; Pl. 56.1 ¶ 34.) The LOD also conducted laps through the main aisles of the store ("brand walks") every half-hour. (Hay Dep. 31:8–20.) Defendant did not require its employees to document floor inspections, but employees prepared internal reports such as a Guest Incident Report, LOD

---

[1] The parties have submitted their respective Statements of Undisputed Facts Pursuant to Local R. 56.1 as a single document. The Court will refer to Plaintiff's responses to Defendant's 56.1 and Plaintiff's statement of additional facts as "Pl. 56.1"; to Defendant's 56.1 and Defendant's responses to Pl. 56.1 as "Def. 56.1"; and to Defendant's further replies to Plaintiff's responses as "Def. Reply 56.1."

Investigation Report, and Team Member Witness Statements when accidents occurred.  (Pl. 56.1 ¶ 3, 36; Def. 56.1 ¶ 3.)

### b. The May 10, 2014 accident

On the afternoon of May 10, 2014, Plaintiff entered Defendant's Richmond Avenue store with her adult son, Juan Espinosa, and her grandson.  (Def. 56.1 ¶ 2; Pl. 56.1 ¶ 24.)  According to Plaintiff's account of the accident, she arrived at the store at approximately 1:45 PM.  (*See* Dep. of Virginia Urrutia ("Urrutia Dep.") 22:23–25, annexed to Crowley Decl. as Ex. G; LOD Investigation Report ("LOD Report"), annexed to Crowley Decl. as Ex. E.)  Plaintiff wore a blouse with pants and flip-flop sandals.  (Urrutia Dep. 24:20–25:14.)  Approximately five minutes after she entered the store, Plaintiff saw clear liquid on the floor in the area in which she would later slip and fall.  (*Id*. at 26:8–25.)  Plaintiff told her son and grandson that she saw liquid on the floor.  (*Id*. at 28:3–10.)  According to Plaintiff's son, Plaintiff mentioned shortly after entering the store that she saw liquid on the floor, but she did not describe the liquid to him.  (Dep. of Juan Espinosa ("Espinosa Dep.") 15:2–10, annexed to Crowley Decl. as Ex. I.)  He did not see the liquid himself as the family entered the store.  (Espinosa Dep. 14:10–18.)  Neither Plaintiff nor her son reported the liquid to Defendant's employees at the time she first saw it.[2] (Urrutia Dep. 27:16–21; Espinosa Dep. 14:10–18, 15:7–19.)

---

[2] Plaintiff provides somewhat conflicting testimony about the presence of Defendant's employees in the area at the time that she first saw liquid on the floor:
>Q: After you saw the water did you report it to anyone you thought to be working for Target?
>A: I didn't necessarily do it because there were plenty of workers coming and going, so, no.
>Q: Did you see any Target workers walk by the water when you first entered the store?
>A: No, I didn't pay attention.  I just kept walking.

(Urrutia Dep. 27:16–28:2.)

Thereafter, Plaintiff and her family walked around the store for about forty minutes and collected sundry groceries. (Espinosa Dep. 12:4–23.) At the time of her fall, Plaintiff was carrying a bag of hot dogs and a jar of pickles in her arms, and she had a purse strapped across her chest. (Urrutia Dep. 24:3–16; Pl. 56.1 ¶ 39; Def. 56.1 ¶ 39.) Plaintiff, her son and her grandson all walked in parallel through the main pharmacy aisle toward the cash registers. (Urrutia Dep. 31:5–18; Espinosa Dep. 13:8–13; Pl. 56.1 ¶ 20.) The floor in the pharmacy department was covered with off-white tiles. (Pl. 56.1 ¶ 26.) Plaintiff was looking straight ahead as she walked, and neither Plaintiff nor her son saw the liquid immediately before she slipped. (Urrutia Dep. 29:13–21; Espinosa Dep. 18:8–16; Def. 56.1 ¶ 9.) As Plaintiff slipped, her body fell to the floor on top of her left leg and arm. (Urrutia Dep. 32:10–21.)

On the day of Plaintiff's accident, the employee assigned to monitor the pharmacy department was not at work. (Hay Dep. 19–22, 53:3–5.) According to Michael Hay, the Senior Team Leader at Defendant's Richmond Avenue location, he heard Plaintiff's fall from ten or fifteen feet away and arrived to find Plaintiff standing with her son and grandson in the aisle. (*Id.* at 46:19–47:17.) Hay observed "a small amount of clear liquid," which he estimated to be about a half-cup, at the end of aisle A2. (*Id.* at 48:6–9, 59; LOD Investigation Report.) Hay called over two other employees on his walkie-talkie, and they verified that nothing had leaked from the merchandise on the surrounding shelves. (Hay Dep. 48:17–50:3.) As they waited for the EMT to arrive to take Plaintiff to the hospital, Plaintiff orally relayed the accident to Hay. (*Id.* at 47:20–25.) Plaintiff, a native Spanish speaker, required her son's help to translate and relay the facts. (Urrutia Dep. 35:3–36:21.) Hay prepared the Guest Incident Report, and Plaintiff signed it. (*Id.*; *see* Guest Incident Report, annexed to Crowley Decl. as Ex. D.) Neither Plaintiff nor her son informed Hay that Plaintiff had seen water in the same area approximately

forty-five minutes prior to Plaintiff's accident. (Urrutia Dep. 38:20–39:3; Hay Dep. 71:24–72:5.)

According to Hay's deposition testimony, he had inspected the area by A2 on a brand walk approximately fifteen minutes prior to the accident. (Hay Dep. 51:12–18.) He had not seen "anything that would be unsafe." (*Id*. at 51:19–24.) Hay also stated that he would have walked through the area approximately forty-five minutes prior to the accident — or about thirty minutes before the brand walk immediately prior to Plaintiff's fall.[3] (*Id*. at 52:3–17.)

### c. Plaintiff's medical treatment

Plaintiff felt pain in her left ankle, knee, and elbow five seconds after her fall. (Urrutia Dep. 43:20–44:3.) She was taken by ambulance to the hospital, where she received painkillers and was X-rayed. (*Id*. at 45:8–12.) The doctor advised Plaintiff that she had damage to her knee ligament but would need magnetic resonance imaging ("MRI") and follow-up tests. (*Id*. at 46:4–25.) At some point thereafter, Plaintiff received an MRI of her knee and began physical therapy. (*Id*. at 56:12–23.) Physical therapy was not helpful, and on July 21, 2014, Plaintiff underwent arthroscopic surgery for her knee. (*Id*. at 57:11–19.) The surgery did not significantly improve Plaintiff's condition. (*Id*. at 59:5–21.)

## II. Discussion

### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant

---

[3] There is no evidence in the record as to whether other employees in the area that afternoon observed or cleaned any spills in the pharmacy aisles. While Defendant has provided a DVD of footage from its security cameras that afternoon — including footage of the pharmacy area twenty minutes prior to Plaintiff's fall, (Guest Incident DVD, annexed to Crowley Decl. as Ex. J) — the quality of the footage renders it impossible to identify how many, if any, of Defendant's employees passed through the area during that time.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 230 (2d Cir. 2015); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id*. The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Plaintiff's negligence claim

Because this action was removed from New York state court on the basis of diversity of citizenship between the parties, Plaintiff's claims are governed by New York substantive law and federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Exec. Risk Indem., Inc. v. Fieldbridge Assocs. LLC*, --- F. App'x ---, ---, 2016 WL 944396, at *2 (2d Cir. Mar. 14, 2016) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive and federal procedural law." (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996))); *Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015) ("When sitting in diversity jurisdiction and determining New York state law claims, we must apply 'the law of New York as interpreted by the New York Court of Appeals.'" (quoting *Licci ex rel Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (per

curiam))).

To establish a *prima facie* case of negligence under New York law, a plaintiff must show: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damages substantially as a result of that breach. *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir.) (citing *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)), *as amended* (Nov. 23, 2015); *see also Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 576 (2011) ("To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on defendant's part to plaintiff, breach of the duty and damages." (citing *Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 333 (1981))).

To prove a breach of the duty of care in a slip-and-fall case, the plaintiff must demonstrate a genuine issue of material fact that the defendant either created the dangerous condition or had actual or constructive notice of the condition. *Feis v. United States*, 484 F. App'x 625, 628 (2d Cir. 2012) (citing *Bykofsky v. Waldbaum's Supermarkets, Inc.*, 619 N.Y.S.2d 760, 761 (App. Div. 1994)); *see also Bynoe v. Target Corp.*, 548 F. App'x 709, 710 (2d Cir. 2013) (summary order) ("Under New York law, a landowner, who did not create the dangerous condition, is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition." (quoting *Taylor v. United States*, 121 F.3d 86, 89–90 (2d Cir. 1997))); *Gordon v. Am. Museum of Natural History,* 67 N.Y.2d 836, 837 (1986) (addressing actual or constructive notice of the dangerous condition in the context of a slip-and-fall accident). Defendant does not contest that it owes a duty to its patrons to maintain its premises in reasonably safe condition. Plaintiff does not argue that Defendant created the condition that caused the accident, (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16), nor does Plaintiff argue that

7

Defendant had actual notice of the condition that caused the accident.[4] The only question before this Court is whether a reasonable jury could find that Defendant had constructive notice of the liquid in which Plaintiff slipped.

"To constitute constructive notice, a defect must be visible and apparent *and* it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Antonelli v. Wal-Mart Stores, Inc.*, 216 F.3d 1071 (2d Cir. 2000) (emphasis added) (quoting *Gordon*, 67 N.Y.2d at 837 (1986)); *see also Bynoe*, 548 F. App'x at 710 (same); *Taylor*, 121 F.3d at 90 (same); *see, e.g.*, *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) (granting summary judgment without reaching the question of whether the hazard existed for a sufficient length of time because the hazard was determined not to be visible and apparent); *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 323–24 (2014) (granting summary judgment where the plaintiff could only prove that plastic lid was visible and apparent, but could not prove that it existed for a sufficient length of time). The plaintiff's burden at this stage of the proceedings is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that the liquid was both visible and apparent and that it existed for a sufficient length of time prior to the accident. *See Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (noting that "in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 [of the Federal Rules of Civil Procedure] will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim," and

---

[4] Although Plaintiff argued in her interrogatory responses that Defendant had actual notice of the hazardous condition, she informed the Court that she would not be advancing an actual notice argument for purposes of this motion and made no arguments as to actual notice in her documents in opposition to Defendant's motion for summary judgment. (*See* Min. Entry dated July 7, 2015.)

holding that "the district court did not err in relying on [the plaintiff's] failure to adduce evidence regarding the elements of his [negligence] claim" in granting summary judgment (citing *Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988))). A plaintiff cannot simply prove that the defendant was "generally aware of the existence of the dangerous condition"; instead, she must prove that the defendant had "notice of the 'particular condition' at issue." *Taylor*, 121 F.3d at 90 (quoting *Gordon*, 67 N.Y.2d at 838).

Here, Defendant asserts that Plaintiff has not produced any evidence that the spilled liquid was (1) visible and apparent and (2) present for a sufficient length of time that Defendant would have had the opportunity to discover and remedy it. (*See* Def. Mem. 9–13.) Plaintiff argues that although Hay conducted a brand walk fifteen minutes before her fall, he negligently failed to notice the same liquid that was visible and apparent to her when she entered the store forty-five minutes prior to her fall. (*See* Pl. Mem. 12.) Construing the evidence in Plaintiff's favor, based largely on Plaintiff's testimony that the clear liquid was on the floor when she first entered the store forty-five minutes prior to the accident, a reasonable jury could find that the hazard existed for a sufficient length of time to permit Defendant to remedy it. However, because Plaintiff has not adduced any evidence beyond her own testimony that the clear liquid was visible and apparent, the Court grants Defendant's motion for summary judgment.

      **i. Sufficient length of time**

The mere presence of a hazardous condition does not create a breach of the duty of care. *See Casierra v. Target Corp.*, No. 09-CV-1301, 2010 WL 2793778, at *2 (E.D.N.Y. July 12, 2010); *see also Serengetti v. Shorestein Co., East L.P.*, 682 N.Y.S.2d 176, 178 (App. Div. 1998) ("The mere existence of a foreign substance, without more, is insufficient to support a claim of negligence."). Rather, there must be evidence of "how long [the substance] was there before the

9

fall." *Casiano v. Target Stores*, No. 06-CV-6286, 2009 WL 3246836, at *3 (E.D.N.Y. Sept. 24, 2009). A plaintiff may not simply offer speculation to support her theory of notice, but can overcome summary judgment "by producing circumstantial evidence that the defective condition existed for a period of time before the accident." *Casierra*, 2010 WL 2793778, at *2; *compare Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 404 (E.D.N.Y. 2004) (finding summary judgment appropriate where the plaintiff's theory of notice was based on "speculation and conjecture far removed from fact" (collecting cases)) *with Bynoe*, 548 F. App'x at 711–12 (vacating and remanding district court's grant of summary judgment where the plaintiff and her expert adduced evidence that spilled syrup crystallized and became sticky after left on floor for some time); *Negri v. Stop & Shop, Inc.*, 65 N.Y.2d 625, 626 (1985) (denying summary judgment where the plaintiff slipped on baby food that was "dirty and messy"); *and Giuffrida v. Metro N. Commuter R.R. Co.*, 720 N.Y.S.2d 41, 42–43 (App. Div. 2001) ("The consistent description of the substance as a 'stain' and 'dry' and 'solid' is evidence from which a jury would be warranted in finding that the condition had been present for a substantial period of time.").

Plaintiff argues that because she observed a clear liquid upon arriving at Defendant's store and slipped in a similar clear liquid in the same area approximately forty-five minutes later, the clear liquid she slipped in was the same liquid she had seen on her way in to the store. (Pl. 56.1 ¶ 50; Pl. Mem. 5.) Defendant relies on a series of cases in which summary judgment was granted because the plaintiff could not offer any non-speculative evidence about how long the substance remained on the ground.[5] (Def. Mem. 13–15.)

---

[5] In support of its argument that it did not have constructive notice of the spill, Defendant asserts that the spill must have been very recent — and perhaps come from the passersby reflected in Defendant's video footage before the accident — because Hay, the Senior Team Leader who responded to the accident, testified that he had conducted a brand walk of the area

10

Plaintiff offers sufficient non-speculative evidence that the liquid in which she fell was on the floor for long enough that Defendant's employees should have noticed it. First, Plaintiff provides her own sworn testimony that she noticed the same type of liquid in the same area shortly after she entered Defendant's store, forty-five minutes before the accident. (Pl. Mem. 3; Urrutia Dep. 29:4–12.) Second, Plaintiff's son states that his mother told him, contemporaneously with her observation, that she saw water as they entered the store. (Pl. Mem. 3; Espinosa Dep. 15:2–10.) Third, Plaintiff correctly argues that Hay's testimony may simply serve as proof of his negligence in overlooking the liquid when he conducted his brand walk fifteen minutes before her fall. (Pl. Mem. 13.)

Defendant's account of the accident — which accepts as true Plaintiff's initial observation of the clear liquid but also insists that there was no liquid on the floor during Hay's brand walk — infers, without stating, that the initial clear liquid that Plaintiff observed was cleaned up before her fall and that another customer spilled new liquid between the last brand walk and Plaintiff's fall. (*See* Def. Mem. 12–13; Def. Reply Mem. 9.) Even under the circumstances inferred by Defendant, a jury could reasonably conclude that Defendant's policy to constantly monitor its floors for spills, (Hay Dep. 28:23–29:9, 31:8–20), and to share that responsibility among at least twenty well-trained employees on the day of the accident, suggests

---

and observed only "normal operations" fifteen minutes prior to the accident. (Hay Dep. 51:12–24.) However, Hay's testimony is in conflict with Plaintiff's testimony that the clear liquid she observed upon entering the store was the same clear liquid in which she fell forty-five minutes later. Because a jury would therefore not be required to credit Hay's testimony, the Court disregards it in deciding Defendant's motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (noting that a court reviewing a summary judgment motion "must disregard all evidence favorable to the moving party that the jury is not required to believe [except] that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from uninterested witnesses.") (citations and internal quotation marks omitted); *Casierra v. Target Corp.*, No. 09-CV-1301, 2010 WL 2793778, at *2 (E.D.N.Y. July 12, 2010) (citing *Reeves*, 530 U.S. at 151).

that the liquid stayed on the floor for a sufficiently long period of time to be identified and cleaned. This is particularly true where it appears that none of Defendant's employees passed through the relevant area in the twenty minutes before Plaintiff's fall, ("Booking Hallway" video on Guest Incident DVD, annexed to Crowley Decl. as Ex. J; Hay Dep. 70:13–24), and where Defendant acknowledges that it was short-staffed in the pharmacy department that day, (Hay Dep. 53:19–22). *See, e.g.*, *Castro v. Target Corp.*, No. 14-CV-526, 2015 WL 1476863, at *5 (E.D.N.Y. Mar. 31, 2015) (finding a triable issue of fact regarding the length of time that paper folders were on the floor because the area was constantly patrolled by the defendant's employees); *Giuffrida*, 720 N.Y.S.2d at 42–43 (finding that the defendants had constructive notice because there was evidence that the "condition had been present for a substantial period of time" and that "the area where [the p]laintiff fell is subject to regular inspection and cleaning"); *see also Kelsey v. Port Authority of N.Y. & N.J.*, 383 N.Y.S.2d 347, 348 (App. Div. 1976) (finding that jury could reasonably conclude that the defendant did not properly observe or clean the hazard in part because "[t]he building attendants were instructed to pay special attention to the fast elimination of all spillages" and "[a] building attendant was present at the scene just prior to the accident").

Accepting as true Plaintiff's assertion that she observed the same type of liquid in the same area forty-five minutes before her fall, and discounting any evidence from Defendant's witness that the jury is not required to accept, a jury could reasonably conclude that the liquid was present for a sufficient length of time that Defendant should have noticed and remedied it.

    **ii. Visible and apparent**

Courts generally look to circumstantial evidence, such as "the circumstances surrounding the injury and the condition of the premises," to determine whether a jury could reasonably draw

the inference that the condition was visible and apparent. *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775, 2013 WL 4017166, at *5 (S.D.N.Y. Aug. 7, 2013) (quoting *Touri v. Zhagui*, No. 06-CV-00776, 2010 WL 779335, at *3 (S.D.N.Y. Mar. 5, 2010)); *see Marasligiller v. City of New York*, 217 F. App'x 55, 58 (2d Cir. 2007) (approving the use of circumstantial evidence to suggest actual notice); *Negri*, 65 N.Y.2d at 626 (approving the use of circumstantial evidence to suggest constructive notice); *see also Nussbaum*, 603 F. App'x at 12 (finding no visible and apparent hazard from detergent residue on floor of train car where conductor saw no residue and the plaintiff saw only water prior to the accident); *Castellanos*, 2013 WL 4017166, at *6 (finding no visible and apparent hazard where plaintiff fell on plastic display sign that was "somewhere between see-through and white" in color, no other witnesses saw the sign and surveillance video did not show other Target patrons slipping or avoiding an object in the accident area); *Schwarz v. FedEx Kinko's Office*, No. 08-CV-6486, 2009 WL 3459217, at *13 (S.D.N.Y. Oct. 27, 2009) (finding that defect in floor mat was not visible and apparent because the plaintiff's witnesses testified that the hazard was concealed, the plaintiff did not observe any visible dangers before her fall and store manager observed no defect or wear-and-tear after the fall)..

Here, Plaintiff argues that the liquid in aisle A2 was visible and apparent because (1) she observed the same liquid when she walked into Defendant's store with her son and grandson forty-five minutes before her fall, and (2) she and Hay both observed the liquid after Plaintiff slipped in it. (Pl. Mem. 1, 12.)

Defendant urges the Court to discount Plaintiff's testimony that she observed the same clear liquid upon entering the store. (Def. Reply 2.) While Defendant correctly notes that "witness credibility is generally inappropriate at the summary judgment stage," Defendant

13

argues, without explanation, that Plaintiff's testimony here falls within an exception because "no reasonable jury would credit [P]laintiff's testimony." (*Id.* (quoting *Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381, 390 (E.D.N.Y. 2007))). While it is true that Plaintiff's testimony could be viewed as somewhat inconsistent,[6] it is not "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005) (citations omitted).

Although the Court makes no credibility determinations as to Plaintiff's testimony, Plaintiff has offered only post-accident observations by herself and Hay to corroborate her initial observation of the liquid forty-five minutes before her accident. Plaintiff points to Hay's deposition testimony that he observed water on the ground after her accident, and to the LOD Investigation Report that memorialized Hay's post-accident observation. (Pl. Mem. 11–12.)

While courts do not discount a plaintiff's post-accident observations about the visibility of the hazard, they tend to credit those observations that are corroborated by other evidence. *See, e.g.*, *Cantalupo v. John Anthony's Water Cafe, Inc.*, 721 N.Y.S.2d 397, 398 (App. Div. 2001) (holding that the plaintiff's testimony that she observed the puddle fifteen-to-twenty minutes before she fell was insufficient on its own to create a triable issue of fact as to visibility); *see also Alexander v. Marriott Int'l, Inc.*, No. 01-CV-1124, 2002 WL 1492125, at *3 (S.D.N.Y. July 11, 2002) (finding that the defendant had constructive notice where the plaintiff's post-accident observations were corroborated by a witness who had seen the hazard twenty minutes prior);

---

[6] Plaintiff testified both that she did not see the liquid immediately before she slipped in it and that she knew it was the same liquid she had seen earlier because it "looked the same as when [she] entered [the store.]" (Urrutia Dep. 29:4–18.)

14

*Yioves v. T.J. Maxx, Inc.*, 815 N.Y.S.2d 119, 120 (App. Div. 2006) (holding that the trial court should have denied the defendants' motion for summary judgment where the plaintiff's post-accident observations were supported by pre-accident observations, and where the defendant's employees submitted no evidence that the slip-and-fall area was inspected or cleaned that day). Plaintiff relies on *Massey v. Newburgh West Realty, Inc.*, 923 N.Y.S.2d 81 (App. Div. 2011), to argue that post-accident observations are sufficient to create a triable issue of fact as to constructive notice. (Pl. Mem. 13.) In finding for the plaintiff on summary judgment in *Massey*, however, the court relied not only on the plaintiff's post-accident testimony about an inch-thick plate of ice that extended across seven feet, but also on freezing February temperatures in upstate New York, to find that a jury could reasonably impute constructive notice of ice to the defendant. *See Massey*, 923 N.Y.S.2d at 84.

Here, Plaintiff has offered no such circumstantial evidence to corroborate her post-accident observations about the liquid. Both Hay's testimony and the LOD Investigation Report stem from the same observation by the same witness, whose job after a customer accident was to closely examine the surrounding area for anything that could have caused the accident. Thus, while Hay's testimony and the LOD Investigation Report establish that the hazard existed, they do not support Plaintiff's claim that the liquid was a visible and apparent hazard that Defendant should have observed before she slipped in it. *See Castellanos*, 2013 WL 4017166, at *3 ("[The plaintiff's] sworn statements that she saw the plastic display sign on the ground after she slipped, are sufficient at the summary judgment phase to establish that a hazardous condition existed." (citing *Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335, 2009 WL 1955555, at *6 (E.D.N.Y. July 6, 2009))).

Although the Court construes the facts in Plaintiff's favor, other evidence in the record —

including Plaintiff's own testimony that she did not see the liquid immediately before she slipped in it — belies the visibility of the liquid. *See Shimunov v. Home Depot USA, Inc.*, No. 11-CV-5136, 2014 WL 1311561, at *6 (E.D.N.Y. Mar. 28, 2014) (finding no constructive notice because neither the plaintiff nor the defendant's employee noticed the oily substance before the plaintiff's fall, so the record "plainly contradict[ed the] plaintiff's assertion that the oily substance was 'visible' or 'apparent'").

Contrary to other cases that found or assumed a visible and apparent hazard, the liquid here was not described as stark against the off-white floor tiles, as trodden and dirty or as vast in surface area. *Compare Negri*, 65 N.Y.2d at 626 (denying summary judgment where "a lot of broken jars" of baby food were "dirty and messy" against the floor), *and Yioves*, 815 N.Y.S.2d at 120 (denying summary judgment where foreign substance on the floor was "about four feet long and two feet wide"), *with Richards v. Pathmark Stores, Inc.*, No. 07-CV-1790, 2008 WL 3165582, at *7 (S.D.N.Y. Aug. 6, 2008) (denying summary judgment on other grounds but noting that the ice on which the plaintiff fell was not visible or apparent because the "[p]laintiff's own deposition testimony suggests that the ice was, in fact, invisible"), *and Pinnock v. Kmart Corp.*, No. 04-CV-3160, 2005 WL 3555433, at *3 (S.D.N.Y. Dec. 29, 2005) (granting summary judgment where the plaintiff could not recall if clear plastic hanger on which she slipped "had any footprints or dirt on it"). Here, the liquid is described as clear against off-white floor tiles and as approximately a half-cup in volume. (Pl. 56.1 ¶26; Hay Dep. 48:6–9, 59; LOD Investigation Report.)

Furthermore, Plaintiff's son, who entered the store with Plaintiff, testified that he did not see the clear liquid upon entering the store. (Espinosa Dep. 14:10–18.) Neither did he or Plaintiff see the clear liquid before Plaintiff slipped and fell. (*Id*. at 18:12–16; Def. 56.1 ¶ 9; Pl.

16

56.1 ¶ 9.) Indeed, Plaintiff's son testified that the liquid in which Plaintiff fell "wasn't noticeable." (Espinosa Dep. 22:10–21.) Moreover, video footage of the area during the twenty minutes preceding the accident shows eight different customers passing through the very area in which Plaintiff fell. ("Booking Hallway" video at 2:15 p.m., 2:17 p.m., 2:18 p.m., 2:20 p.m., 2:22 p.m., 2:26 p.m., 2:28 p.m., 2:33 p.m.) As in *Castellanos*, none of the customers in the video footage avoided or in any way noticed a spill on the ground. *See Castellanos*, 2013 WL 4017166, at *6. As in *Schwarz*, Plaintiff did not observe the hazard right before she fell, and her own witness stated that it was not noticeable. *See Schwartz*, 2009 WL 3459217, at *13. Moreover, as in *Shimunov*, evidence in the record contradicts Plaintiff's assertions of visibility. *See Shimunov*, 2014 WL 1311561, at *6. Thus, a reasonable jury would have insufficient evidence from which to find that the clear liquid in which Plaintiff slipped was visible and apparent.

Because Plaintiff has not produced any evidence that the liquid in which she fell was visible and apparent, she has not raised a triable issue of fact with respect to constructive notice.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: May 27, 2016
       Brooklyn, New York